UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re:                                          Chapter 11, No. 15-30404-HJB

SPECTRUM ANALYTICAL, INC.

Debtor

## MOTION FOR INTERIM AND FINAL USE OF CASH COLLATERAL AND GRANT OF ADEQUATE PROTECTION

To the Honorable Henry J. Boroff, United States Bankruptcy Judge:

Now comes Spectrum Analytical, Inc., the debtor and debtor-in-possession in the above-captioned matter ("Spectrum", or together with its affiliate, Hanibal Technology, LLC, collectively, the "Debtors"), through its undersigned counsel, the law firm of Bacon Wilson, P.C., and pursuant to 11 U.S.C. §§ 105(a) and 363, Rules 4001, and 9014 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-2 of the Local Rules of this Court, respectfully requests the entry of an Order (i) providing for the interim use of cash collateral; (ii) providing adequate protection to the Debtors' secured lender; and (iii) authorizing the final use of cash collateral.  In support thereof, the Debtors respectfully represent as follows:

Preliminary Statement, Procedural Allegations, and Background

1.      On April 30, 2015 (the "Petition Date"), the Debtors each filed a Voluntary Petition seeking relief under the provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Court").

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2)(M).  Venue in this District is proper pursuant to 28 U.S.C. § 1408.

3.       Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtors intend to operate their business and manage their affairs as Debtors-in-Possession.  No Trustee or examiner has been requested or appointed in either of the Debtors' cases.

4.       Spectrum is a Massachusetts corporation that provides testing and analytical data for a variety of environmental interests. Through its services and programs, Spectrum performs quantitative analysis of soil, water, air samples, and petroleum products and generates data that provides its clients with information relative to the environmental quality of materials being analyzed.   Spectrum maintains offices in Agawam, Massachusetts, Tampa, Florida, North Kingstown, Rhode Island, and Syracuse, New York.

5.       Technology is a Massachusetts limited liability company that focuses on education, research, and development in environmental technology.   Technology also serves as Spectrum's exclusive international marketing and sales agent.

6.       Spectrum, through this Motion, seeks authority to use such assets of Spectrum as may constitute cash collateral in accordance with the budget attached hereto as Exhibit "A".   Use of cash is necessary to enable Spectrum to operate its business and pay ongoing costs, including, without limitation, payment for goods and services required to operate the business, insurance, utilities, payroll, marketing, and other expenses incurred in the day-to-day operations of Spectrum's business.

7.       Due to circumstances facing Spectrum's business, the Debtor requests that an interim hearing on this Motion be scheduled as soon as possible, as the use of cash is essential to avoid immediate and irreparable harm to Spectrum and its bankruptcy estate.

8.       In accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 4001-2 of the Local Rules of this Court, the relief requested in this Motion entails the ongoing use of cash collateral and granting of adequate protection to a secured lender.

9.       Pursuant to an Order Appointing Temporary Receiver issued by the Superior Court of the State of Rhode Island on April 2, 2015 in case number WC12-0012, Mark Russo (the

"Receiver"), of Providence, Rhode Island, has been serving as Temporary Receiver of each of the Debtors since on or about April 2, 2015 until the date hereof.

10.     The Debtors and their principals have not had access to their books, records, and accounting systems since the appointment of the Receiver.

11.     Based upon information from approximately April 1, 2015, the liabilities of Spectrum include approximately $8,900,000.00 in secured debt to Bank Rhode Island, and $1,367,213.14 in unsecured debts.

12.     The debt to Bank Rhode Island is secured by, inter alia, the Debtor's receivables and other cash collateral.

13.     In addition, Spectrum estimates that as of April 1, 2015, its assets have values as follows:

| | |
|---|---|
| Real Estate: | $3,100,000 |
| Instruments and Equipment: | $4,750,000 |
| Computers/IT Equipment: | $650,000 |
| Licenses, Patents, other Intellectual Property: | $2,500,000 |
| Inventory: | $500,000 |
| Vehicles: | $250,000 |
| Technologies: | $500,000 |
| Accounts Receivable: | $4,000,000 |
| | $16,250,000 |

Relief Requested

14.     By this Motion, Spectrum seeks authority to use cash collateral, thereby permitting Spectrum to operate its business and manage its affairs unimpeded.

15.     On or about January 15, 2014, the Debtors entered into a financing transaction with Bank Rhode Island whereby Bank Rhode Island loaned the Debtors the total sum of $8,400,000.00 pursuant to a Credit Agreement and two (2) Security Agreements and other loan documents. The Security Agreements granted Bank Rhode Island a security interest in all of the Debtors' assets including, but not limited to, all accounts, accounts receivable, inventory, general intangibles,

equipment, deposit accounts, and their proceeds. Pursuant to a series of amendments to the loan documents, there are currently four (4) outstanding credit facilities owed to Bank Rhode Island (collectively the "Prepetition Obligations"). The total balance due on account of the Prepetition Obligations is approximately $8,900,000.00. Bank Rhode Island is fully secured and holds security interests in the Debtor's cash collateral.

16.    <u>Purposes for Use of Cash Collateral.</u>  Spectrum requires the use of cash collateral to continue its business operation uninterrupted. Spectrum intends to use the cash collateral to pay employees, to purchase supplies, to pay service providers, to pay administrative expenses incurred by the Debtor's Bankruptcy Estate, and to pay other ongoing usual and necessary expenses incurred in the day-to-day operation of the business. Spectrum seeks authority to use certain of its assets that may constitute cash collateral substantially in accordance with the Budget annexed hereto as Exhibit "A".

17.    <u>Material Terms of Use of Cash Collateral; Duration.</u> Spectrum requests the use of cash collateral in accordance with, and on the same terms as, the underlying loan documents between the Debtors and Bank Rhode Island. Spectrum seeks authorization to use cash collateral during the term of any Interim Order that may be entered in connection with this Motion and during the term of the Chapter 11 case upon the entry of any Final Order on this Motion.

18.    <u>Liens and Cash Payments to be Provided.</u> Bank Rhode Island will be granted a replacement lien in all post-petition property of the Debtors, of the same nature, to the same extent, and with the same priority as the lien existing as of the Petition Date. In addition, Spectrum proposes to make monthly payments to Bank Rhode Island in the approximate amount of $52,000.00.

19.    Spectrum requires the immediate use of cash collateral to fund operational and administrative expenses.   Absent the use of cash collateral, Spectrum will be forced to cease operations, destroying the going concern value of the Debtor's business to the detriment of the Debtors, their estates, their creditors, their customers, and approximately 150 employees.

20.    Use of the cash collateral is, therefore, critical to preserve and maintain the Debtors' estates, to promote successful reorganization in these Chapter 11 bankruptcy cases, and to maintain

the jobs of approximately 150 employees.  Granting the relief requested, therefor, is necessary to prevent immediate and irreparable harm to the Debtors, their estates, their creditors, their customers, and approximately 150 employees.

## Adequate Protection

21.     Upon information and belief, Bank Rhode Island is the only party claiming an interest in cash collateral.

22.     Based on the estimated value of the collateral securing the claims of Bank Rhode Island, the Debtor submits that Bank Rhode Island enjoys an equity cushion equating to "adequate protection" of its position to which it is entitled under Section 361 of the Bankruptcy Code because the estimated value of the collateral exceeds the total amount due on account of its secured claims.

23.     The Debtors further submit that the interests of Bank Rhode Island in the collateral will be adequately protected by the granting of postpetition liens and the entry of an Order authorizing and directing Spectrum to make postpetition payments set forth above.

24.     Spectrum submits that the budget annexed hereto as Exhibit "A" demonstrates that income generated by Spectrum's continued operation of the business will generate sufficient cash flow to pay the accruing obligations, including operational and administrative expenses

## Notice

25.     In accordance with the provisions of MLBR 4001-2, notice of this Motion shall be given to (i) counsel to the United States Trustee, (ii) Bank Rhode Island and its counsel, (iii) the creditors holding the twenty (20) largest unsecured claims, (iv) all parties having requested notices and service of papers pursuant to Rule 2002, (v) taxing authorities, and (vi) the Debtor.

WHEREFORE, the Debtors respectfully request the entry of an Order, authorizing the use of cash collateral, providing adequate protection to Bank Rhode Island, scheduling a final hearing on the Motion, approving the final use of cash collateral, and providing such other and further relief as the Court deems just and proper.

Respectfully Submitted,
Spectrum Analytical, Inc. and
Hanibal Technology, LLC
By Their Attorneys

/s/ Spencer A. Stone
Spencer A. Stone
(BBO No. 674548)
Michael B. Katz
(BBO No. 261460)
Bacon Wilson, P.C.
33 State Street
Springfield, MA 01103
Tel.: (413) 781-0560
Fax: (413) 739-7740
sstone@baconwilson.com
mkatz@baconwilson.com
April 30, 2015

Exhbit "A"

|  | May 2015 | June 2015 | July 2015 |
|---|---|---|---|
| **Total Revenues** | $ 1,486,847.02 | $ 1,486,847.02 | $ 1,486,847.02 |

**Expenses**

| | | | |
|---|---|---|---|
| Direct Labor Cost | $ 242,106.19 | $ 242,106.19 | 242,106.19 |
| Courier Labor Cost | $ 26,141.93 | $ 26,141.93 | 26,141.93 |
| OT Direct | $ 16,200.63 | $ 16,200.63 | 16,200.63 |
| Subcontract Laboratory | $ 19,465.77 | $ 19,465.77 | 19,465.77 |
| Consultants | $ 563.21 | $ 563.21 | 563.21 |
| Lab Maintenance Expense | $ 2,799.04 | $ 2,799.04 | 2,799.04 |
| Express Delivery | $ 17,997.37 | $ 17,997.37 | 17,997.37 |
| Lab Supplies - Gas Tanks | $ 25,571.06 | $ 25,571.06 | 25,571.06 |
| Air Maintenance | $ 500.00 | $ 500.00 | 500.00 |
| Air Supplies | $ 4,849.03 | $ 4,849.03 | 4,849.03 |
| Inorganic Maintenance | $ 13,431.62 | $ 13,431.62 | 13,431.62 |
| Inorganic Supplies | $ 22,475.82 | $ 22,475.82 | 22,475.82 |
| Microbiology Maintenance | $ 91.90 | $ 91.90 | 91.90 |
| Microbiology Supplies | $ 1,493.44 | $ 1,493.44 | 1,493.44 |
| QA/QC Supplies | $ 4,681.81 | $ 4,681.81 | 4,681.81 |
| Sample Services - Supplies | $ 48,542.45 | $ 48,542.45 | 48,542.45 |
| Treatability Supplies | $ 299.16 | $ 299.16 | 299.16 |
| SVOC Maintenance | $ 6,082.53 | $ 6,082.53 | 6,082.53 |
| SVOC Supplies | $ 50,270.12 | $ 50,270.12 | 50,270.12 |
| VOC Maintenance | $ 5,932.18 | $ 5,932.18 | 5,932.18 |
| VOC Supplies | $ 7,145.15 | $ 7,145.15 | 7,145.15 |
| Wet Chemistry Maintenance | $ 2,864.81 | $ 2,864.81 | 2,864.81 |
| Wet Chemistry Supplies | $ 12,131.96 | $ 12,131.96 | 12,131.96 |
| Equipment Rental | $ 208.16 | $ 208.16 | 208.16 |
| Outside Disposal | $ 13,843.99 | $ 13,843.99 | 13,843.99 |
| Travel - Tolls | $ 1,088.68 | $ 1,088.68 | 1,088.68 |
| Travel - Mileage | $ 12.24 | $ 12.24 | 12.24 |
| Sales Use Tax Expense | $ 5,100.23 | $ 5,100.23 | 5,100.23 |
| Long Term Disability | $ 1,758.12 | $ 1,758.12 | 1,758.12 |
| Short Term Disability | $ 443.00 | $ 443.00 | 443.00 |
| Group Medical HNE | $ 37,986.38 | $ 37,986.38 | 37,986.38 |
| Employer funded HRA Claims | $ 4,900.93 | $ 4,900.93 | 4,900.93 |
| Group Life and Disability | $ 756.56 | $ 756.56 | 756.56 |
| Officers Life Insurance | $ 2,859.63 | $ 2,859.63 | 2,859.63 |
| Wrap Insurance | $ 1,286.42 | $ 1,286.42 | 1,286.42 |
| Property Insurance | $ 2,572.73 | $ 2,572.73 | 2,572.73 |
| Vehicle Insurance | $ 1,977.12 | $ 1,977.12 | 1,977.12 |
| Workers Comp Insurance | $ 4,305.19 | $ 4,305.19 | 4,305.19 |

| | | | |
|---|---|---|---|
| Professional Liability Insurance | $ 5,859.68 | $ 5,859.68 | $ 5,859.68 |
| Commercial Umbrella Insurance | $ 7,459.57 | $ 7,459.57 | $ 7,459.57 |
| Employer 401K Contribution | $ 10,731.87 | $ 10,731.87 | $ 10,731.87 |
| Payroll Taxes | $ 49,869.92 | $ 49,869.92 | $ 49,869.92 |
| Medical Exams | $ 1,362.23 | $ 1,362.23 | $ 1,362.23 |
| Training Seminars | $ 640.07 | $ 640.07 | $ 640.07 |
| Other Employee Benefits | $ 546.27 | $ 546.27 | $ 546.27 |
| Educational Assistance | $ 569.50 | $ 569.50 | $ 569.50 |
| Utilities | $ 36,108.60 | $ 36,108.60 | $ 36,108.60 |
| Building Maintenance | $ 13,230.69 | $ 13,230.69 | $ 13,230.69 |
| Rent | $ 16,267.88 | $ 16,267.88 | $ 16,267.88 |
| Telephone - Office | $ 2,621.06 | $ 2,621.06 | $ 2,621.06 |
| Telephone - Mobile/Pagers | $ 2,632.75 | $ 2,632.75 | $ 2,632.75 |
| Vehicle Gas | $ 7,251.70 | $ 7,251.70 | $ 7,251.70 |
| Vehicle Maintenance | $ 2,870.66 | $ 2,870.66 | $ 2,870.66 |
| Vehicle Lease Rental | $ 108.02 | $ 108.02 | $ 108.02 |
| Membership Dues | $ 697.06 | $ 697.06 | $ 697.06 |
| State Certification Fees | $ 14,511.13 | $ 14,511.13 | $ 14,511.13 |
| Travel | $ 7,865.33 | $ 7,865.33 | $ 7,865.33 |
| Entertainment | $ 9,031.43 | $ 9,031.43 | $ 9,031.43 |
| Direct Staff / Indirect Labor | $ 62,862.16 | $ 62,862.16 | $ 62,862.16 |
| OT Indirect | $ 1,074.48 | $ 1,074.48 | $ 1,074.48 |
| Marketing | $ 47,267.64 | $ 47,267.64 | $ 47,267.64 |
| Vacation | $ 30,766.04 | $ 30,766.04 | $ 30,766.04 |
| Sick/Personal | $ 9,879.73 | $ 9,879.73 | $ 9,879.73 |
| Holiday | $ 14,737.41 | $ 14,737.41 | $ 14,737.41 |
| Continuing Education | $ 9,385.37 | $ 9,385.37 | $ 9,385.37 |
| Indirect/Clerical | $ 101,126.88 | $ 101,126.88 | $ 101,126.88 |
| Health and Safety | $ 366.26 | $ 366.26 | $ 366.26 |
| Employee Supplies | $ 3,722.34 | $ 3,722.34 | $ 3,722.34 |
| Computer Supplies | $ 6,753.22 | $ 6,753.22 | $ 6,753.22 |
| Office supplies | $ 5,988.61 | $ 5,988.61 | $ 5,988.61 |
| Postage | $ 1,486.45 | $ 1,486.45 | $ 1,486.45 |
| Advertising and Promotion | $ 470.00 | $ 470.00 | $ 470.00 |
| Storage Rent | $ 1,297.76 | $ 1,297.76 | $ 1,297.76 |
| Relocating Expense | $ 479.84 | $ 479.84 | $ 479.84 |
| Donations | $ 275.55 | $ 275.55 | $ 275.55 |
| Accounting | $ 4,413.50 | $ 4,413.50 | $ 4,413.50 |
| Legal | $ 20,495.68 | $ 20,495.68 | $ 20,495.68 |
| Consultants Indirect | $ 9,494.50 | $ 9,494.50 | $ 9,494.50 |
| Bank Service Charges | $ 2,259.08 | $ 2,259.08 | $ 2,259.08 |
| Bad Debt Expense | $ 153.80 | $ 153.80 | $ 153.80 |
| Collection Fee Expense | $ 227.86 | $ 227.86 | $ 227.86 |
| Attorney General Fee | $ 36,100.00 | $ 36,100.00 | $ 36,100.00 |
| Payroll Processing | $ 609.06 | $ 609.06 | $ 609.06 |
| Mass Health Insurance | $ 559.02 | $ 559.02 | $ 559.02 |
| Real Estate Tax | $ 5,814.56 | $ 5,814.56 | $ 5,814.56 |

| | | | | | |
|---|---|---|---|---|---|
| Mass Corp Income Tax | $ | 2,551.10 | $ | 2,551.10 | $ | 2,551.10 |
| CT Corp Tax | $ | - | $ | - | $ | - |
| Taxes - Other | $ | 183.00 | $ | 183.00 | $ | 183.00 |
| RI Corp Income Tax | $ | 50.00 | $ | 50.00 | $ | 50.00 |
| NY Corp Tax | $ | 30.00 | $ | 30.00 | $ | 30.00 |
| Administrative Expenses | $ | 15,000.00 | $ | 15,000.00 | $ | 15,000.00 |
| Debt Service | $ | 52,000.00 | $ | 52,000.00 | $ | 52,000.00 |
| **Total Expenses** | $ | 1,248,852.86 | $ | 1,248,852.86 | $ | 1,248,852.86 |
| **Net Income** | $ | 237,994.17 | $ | 237,994.17 | $ | 237,994.17 |