UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11, No. 15-30404-HJB |
| SPECTRUM ANALYTICAL, INC. | |
| Debtor | |

| | |
|---|---|
| In re: | Chapter 11, No. 15-30405-HJB |
| HANIBAL TECHNOLOGY, LLC | |
| Debtor | |

## AFFIDAVIT OF HANIBAL C. TAYEH IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS

I, Hanibal C. Tayeh, Ph.D, having first been duly sworn, do hereby depose and say as follows:

1. I am a director and the sole shareholder and officer of Spectrum Analytical, Inc. ("Spectrum"), and the sole member and manager of Hanibal Technology, LLC ("Technology" or collectively with Spectrum, the "Debtors"). Except as otherwise set forth herein, I am familiar with the Debtors' day-to-day operations, business, and financial affairs.
2. On April 30, 2015 (the "Petition Date") the Debtors each filed a Voluntary Petition seeking relief under the provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts.
3. I submit this Affidavit in support of the Debtors' Voluntary Petitions and the Motions and Applications filed by the Debtors on or about the Petition Date.
4. Except as otherwise indicated, all statements set forth in this Affidavit are based upon (i) my personal knowledge, (ii) information supplied to me by other members of the Debtors' management or the Debtors' professionals, (iii) my review of relevant documents, or (iv) my opinion based upon my experience and knowledge of the Debtors' operations and financial affairs. If called to testify, I would testify to the facts set forth herein. I am authorized by the Debtors to submit this Declaration.

### Background

5. Spectrum is a Massachusetts corporation and is a leading environmental testing laboratory. It does quantitative analysis of soil, water, air and other matrices since 1990.

The matrices that it investigates include drinking water, waste water, groundwater, sludge/sediment, soil, solid waste, tissue and oil. It conducts business both domestically and internationally, and has done business in the United States, the Caribbean, South American, the Middle East, Asia and Africa.

6. Spectrum has four locations, including its primary headquarters in Agawam, Massachusetts, a full laboratory in North Kingstown, RI, a full laboratory in Tampa, FL and a service center in Syracuse, NY.

7. Spectrum also evaluates remediation technologies and does environmental forensic studies and analytical testing. It has acted as expert witnesses in traditional matters, and has a United States EPA contract lab program, which has been operating since 1994. The company has State certificates from a significant number of States in the U.S. Spectrum Analytical is a full-service testing laboratory, specializing in a wide variety of environmental analysis, including organic, inorganic, wet chemistry, microbiology and air.

8. Technology is a Massachusetts limited liability company with Dr. Hanibal Tayeh acting as its sole Member and General Manager. It was formed in 2003 and is the exclusive international sales agent for Spectrum. The goal of Technology is to allow third world countries to understand their own environmental degradation and to create opportunities for local residents to be trained in environmental science assessment, as well as to provide job opportunities in their home countries. Technology currently has an executed contract to build a lab in Saudi Arabia at a contract price of approximately $40 million, which is anticipated to produce substantial net revenues for both Technology and Spectrum.

9. The primary reason for the filing of the Chapter 11 cases of the Debtors was for Dr. Tayeh and his family to regain physical possession and control of both Spectrum and Technology.

10. Approximately one month ago, in March of 2015, Tayeh and his company were having discussions with its primary secured lender, Bank Rhode Island ("Bank RI" or "Bank"), who had become its lender in January of 2014, after Dr. Tayeh and his company had enjoyed a very positive relationship with Westfield Bank. There are various loans with Bank RI, but they total approximately $8.9 million, against which the Bank has liens on various collateral of both debtors having a total estimated value of approximately $17 million, leaving substantial net equity for the adequate protection of the Bank.

11. Bank RI, pursuant to its Loan Agreement, sent an examiner to Spectrum's office to conduct post-closing due diligence and inspection. It was allegedly discovered at that time that a Letter of Credit that had been delivered to Spectrum and Technology from a customer in Saudi Arabia had some irregularities and in fact turned out to have been falsified.

12. Neither Spectrum, Technology, nor the principals of the companies had any knowledge of the falsity of the Letter of Credit. In fact, Bank RI could have easily verified the validity of the Letter of Credit when the loan was made a year prior, but chose not to do so. It is alleged that rather than allowing Dr. Tayeh and his company to resolve the issue, the Bank immediately moved for the appointment of a Receiver through the Superior Court of Rhode Island.

13. A Receiver was duly appointed, who acted to immediately displace Dr. Tayeh and all family members from access to business assets or entry onto the business premises. One of the assets in the Chapter 11 is the potential cause of action that the Debtor intends to file against Bank RI for its precipitous and unwarranted action.

14. It should be noted that although Bank RI alleges several defaults under the terms of the loan documents, none of these defaults were a failure to make timely payments.
15. Immediately upon learning of the irregularity in the Letter of Credit, Dr. Tayeh flew to Saudi Arabia and had meetings with government officials who were involved with this contract and they were successful in the government obtaining a full confession by the perpetrators of the fraud, which verified that Dr. Tayeh and his company had no knowledge of the falsehood of the Letter of Credit, and the contract has been taken over by the government of Saudi Arabia, rather than a private company as was previously the case. The confession of the officials and the resolution of the matter is presently being translated by an official translator and will be provided to the Court when available.
16. Dr. Tayeh and his companies are confident that they will be able to propose a successful Plan of Reorganization within a reasonably short period of time and they will also seek to find a lender to take over the banking relationship with Bank RI.

## Facts Supporting First Day Motions

17. The Debtors represent that each of the following motions and applications are critical to their reorganization strategy.

<u>Cash Collateral:</u>

18. Spectrum has filed a Motion for Interim and Final Use of Cash Collateral (the "Cash Collateral Motion"), by which, Spectrum seeks entry of an Order on an interim basis authorizing it to use cash collateral for the operation of its business in accordance with the budget annexed thereto as Exhibit "A". Spectrum also requests entry of an Order granting Bank RI post-petition replacement liens, and for post-petition payments to Bank RI.
19. The Debtors are jointly and severally indebted to Bank RI in the approximate amount of $8,900,000.00 of account of several loans. As security for those loans, the Debtors, jointly have granted first-priority security interests in substantially all of their assets.
20. Spectrum requires the immediate use of cash collateral to fund operational and administrative expenses. Failure to obtain such authority would result in the immediate cessation of both Debtors' businesses. Terminating the business would result in the loss of approximately 150 jobs and the Debtors' various national and international clients would be forced to obtain services elsewhere. Therefore, the use of cash collateral is critical to preserve and maintain the Debtors' estates and to attempt a successful reorganization in these Chapter 11 cases.
21. The value of the collateral securing the Bank RI loans is estimated to be approximately $17,000,000.00.

<u>Motion to Extend Time to File Creditor Matrices:</u>

22. As noted above, the Debtors have been under the control of a Receiver for the last several weeks. As a result the principals have not had access to the offices, laboratories, books, records, computer systems, and accounting systems of the Debtors.
23. In order to complete accurate Creditor Matrices, the Debtors must gather and review a substantial amount of information and documentation that the principals are not currently able to access.

24. The requested extension of time is necessary to ensure the accuracy of the Creditor Matrices.

Application to Employ Bacon Wilson, P.C. as counsel:

25. Pursuant to the Application to Employ Counsel, the Debtors seek to employ Bacon Wilson, P.C. as counsel in these proceedings due to the firm's extensive experience and knowledge in the area of business reorganization under Chapter 11 of the Bankruptcy Code, and its ability to respond effectively to legal issues that may arise in connection with these cases. Bacon Wilson, P.C. is well qualified to represent the Debtors in these cases in an effective manner.
26. In its prepetition of these Chapter 11 cases, Bacon Wilson, P.C. developed an understanding of the Debtors' business, the factors giving rise to its need to reorganize, the multiple issues unique to the Debtors' business affairs, and may of the legal issues that may arise in these cases.
27. For these reasons, I believe that Bacon Wilson, P.C. is both well qualified and uniquely suited to represent the Debtors in these matters.

Joint Administration:

28. The Debtors are affiliates of each other, as defined in Section 101 of the Bankruptcy Code.
29. I believe that the entry of an Order directing joint administration of the Debtors' cases will obviate the need for duplicative notices, motions, applications, and orders, thereby streamlining the administration of the respective estates and saving the Debtors and parties in interest time and expense

Emergency Determination:

30. The Debtor requests a hearing on several of the first day motions on an emergency bases. I believe that emergency determination is necessary to avoid immediate and irreparable harm to employees, customers, and the Debtors' bankruptcy estates.

I declare under penalty of perjury under 28 U.S.C. § 1748, that the foregoing is true and correct to the best of my knowledge and belief.

Dated April 30, 2015

_____
Hanibal C. Tayeh, Ph.D.,
President of Spectrum Analytical, Inc. and
Manager of Hanibal Technology, LLC